IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number: 00-6194-CR-DIMITROLEAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RAMON DEL VALLE,

    Defendant.

_____/

**NIGHT BOX FILED**
SEP - 1 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## MOTION TO SUPPRESS

COMES NOW the Defendant, Ramon Del Valle, by and through his undersigned counsel, pursuant to the Fourth and Fifth Amendments to the United States Constitution and pursuant to the Federal Rules of Criminal Procedure, and hereby moves this Honorable court to suppress the use of certain tangible and intangible evidence taken by the prosecution team from a studio rented by the Defendant and his common law wife located at 620 NE 2nd Court, #7, in Hallandale, Florida. The Defendant also seeks suppression of any and all tape-recorded conversations, between the Defendant and his common law wife, from the federal detention facility. As grounds, the Defendant would show as follows:

1. That in the early morning hours of January 20, 2000 a group of federal agents, among them agents of the Federal Bureau of Investigation and others known and unknown



to the Defendant appeared at the home of the Defendant and his common law wife, Nellie Santana. This studio was rented in the name of Nellie Santana and it was where, both she and the Defendant, who have been together for over 19 years and have two children, were residing.

2. That upon information and belief various law enforcement officers position themselves at the door and armed stormed into the Defendant's home, with weapons drawn.

3. That the Defendant, who had just gotten out of the shower, quickly positioned himself at the main room of the studio, and was immediately placed under arrest.

4. That the federal law enforcement officers upon entering the doorway grabbed the Defendant, handcuffed him and began to question him.

5. That upon information and belief law enforcement did not have a search warrant nor did they have an arrest warrant. To the extent that law enforcement was in possession of either of these two documents, to date, counsel has not been furnished copies of same.

6. That law enforcement proceeded immediately to search the small studio in its entirety. That law enforcement also proceeded to question the Defendant and his wife immediately after the Defendant was placed under arrest.

7. That law enforcement had the Defendant execute a form, purporting to be a written consent to search the Defendant's home, that this consent was obtained <u>after</u> the home was searched and the evidence seized. Likewise, law enforcement obtained an <u>Interrogation;</u>

Advise of Rights form. Again, said form was obtained <u>after</u> the Defendant had been fully interrogated and admissions were made.

8. That the search of the Defendant's studio yielded a firearm, to wit, a Rohm Handgun and ammunition.

### *Memorandum of Law*

### *Fourth Amendment Violation*

### *(a) Search of the Home*

Any doubts about the general requirement of a search warrant to search a home have been laid to rest by the Supreme Court's decision in <u>Payton v. New York</u>, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Warrantless searches and seizures inside one's home are presumptively unreasonable. <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and <u>United States v. Burgos</u>, 720 F.2d 1520, 1525 (11th Cir. 1983). Where, however exigent circumstances "make it impossible or impractical to obtain a warrant," and where probable cause exists to arrest or to search, the failure to obtain a warrant will be excused. <u>United States v. Edmondson</u>, 791 F.2d 1512, 1515 (11th Cir. 1986).

> The exigent circumstances exception to the Fourth Amendment warrant requirement applies in 'those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence outweigh the reasons for prior recourse to a neutral magistrate'".
>
> United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir.

> 1983) cert. denied, 464 U.S. 914 (1983) quoting <u>Arkansas v. Sanders</u>, 442 U.S. 753, 759 (1979).
>
> Because the protections of the Fourth Amendment are crucial to a free and viable society, the Government shoulders a heavy burden of justifying the failure to obtain a warrant prior to the intrusion. Id.

Generally see <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 741, 104 S.Ct. 2091, 2093, 80 L.Ed.2d 732 (1984). The Government bears a "heavy" burden of proof that exigent circumstances existed. 466 U.S. at 749, 751-52, 104 S.Ct. At 2098-99.

"The phrase 'exigent circumstances' refers generally to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and without seeking prior judicial authority." <u>United States v. Campbell</u>, 581 F.2d 22, 25 (2nd Cir. 1978). "The determination of exigent circumstances, vel non, necessarily turns upon whether in light of all the facts of the particular case, there was an 'urgent need' that justifies a warrantless entry." <u>United States v. Martinez-Gonzalez</u>, 686 F. 2d 93, 100 (2nd Cir. 1982) quoting <u>Dorman v. United States</u>, 435 F.2d 385, 391 (D.C. Cir. 1970).

One factor for consideration is the gravity of the offense, although that factor alone does not overcome the presumption of unreasonableness that attaches to a warrantless house arrest. <u>Martinez-Gonzalez</u>, supra 686 F.2d at 100; other facts include:

> (2) whether the suspect is reasonably believed to be armed;

Page 4

>(3) a clear showing of probable cause . . . to believe that the suspect committed the crime;
>
>(4) strong reason to believe that the suspect is in the premises being entered;
>
>(5) a likelihood that the suspect will escape if not swiftly apprehended;
>
>(6) the peaceful circumstances of the entry.
>
>Martinez-Gonzalez, supra at 100.

For example, officers in "hot pursuit" of an armed robber who has just committed the crime may follow him into his home without obtaining a warrant. United States v. Campbell, 581 F.2d 22, 25 (2nd Cir. 1978). Where delay could cause the escape of the suspect or the destruction of evidence, exigent circumstances exist. United States v. Campbell, 581 F.2d 25, supra; and United States v. Watson, 423 U.S. 411, 435, 96 S.Ct. 820, 833, 46 L .Ed.2d 598 (1976). In sum, circumstances which, when viewed as of the time of entry, would lead a reasonable person to believe that unless an entry and arrest are made immediately, the suspect may escape, destroy essential evidence or continue the commission o an on-going crime, represent exigencies of the type justifying immediate police action on probable cause, without first obtaining a warrant. United States v. Campbell, supra at pg. 26. The totality of the circumstances must be evaluated. United States v. Campbell, supra at page 27.

In this particular case, it is unclear as to the reasons, if any, why law enforcement

failed to go to the Magistrate or District Judge to obtain a search warrant in order to obtain entry into the Defendant's home and arrest him. It is clear, however, that no search warrant was obtained. The Defendant was immediately placed under arrest, upon the entry of law enforcement, into the home. Where exigent circumstances trigger the warrantless entry of premises, the intrusion must be limited in scope and proportionate to the exigency which excuses the warrant requirement. United States v. Socey, 846 F.2d 1439 (D.C. 1988).

### Fifth Amendment violation

### (b) Defendant's consent

Law enforcement produced two documents purportedly evidencing the Defendant's consent to search his home and to make statements. These two written forms were obtained after the defendant was already in custody, handcuffed and obviously, not free to go. As early as 1938, the Supreme Court stated that there is a presumption against waiver of constitutional rights. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In this case, there are two forms obtained by law enforcement. The issue is the validity of these forms that on their face, seem to contain a waiver on the part of the Defendant, both as to a search of the premises and as to his right to remain silent. The "totality of the circumstances" test was first announced in Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). A determination must be made that Mr. Del Valle's consent was his own "essentially free and unconstrained choice . . ." and that it had not "been overborne and

his capacity for determination critically impaired. See Schneckloth, supra at pg. 225. Furthermore, it is also a well-settled proposition that any consent obtained under false pretenses or by fraud, is likewise invalid. See Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 2d 647 (1921) (friend acting for police officer seized papers by stealth while pretending to make a social call. In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) law enforcement pretended to have a search warrant

### *(II) Tape-recorded Conversations from FDC- Miami*

#### *Facts*

The Defendant, Ramon Del Valle, was arrested on January 20, 2000. This arrest was based on an indictment stemming from a case, the facts of which date back to, as it relates to Mr. Del Valle, approximately 1997. The case is presently before the Honorable Judge Hurley. The facts of that case involve alleged acts of fraud in dealing with consumers of moving services. Mr. Del Valle was an employee, during some of the time periods involved in the alleged fraudulent scheme, by the main player, Yaron Tisby. At the Defendant's initial appearance before the Magistrate, inspite of the limited exposure (sentencing wise) he was to have in the Hurley case (all other defendant's have been released on bond) the Defendant has been detained unable to post the $ 50,000.00 corporate surety bond set by the Magistrate at the initial appearance. It was known to the Government, at the time of the

initial appearance, that Mr. Del Valle has a prior criminal history, it was based on this criminal history, that his bond remained at $ 50,000.00 corporate surety. Subsequent to the Defendant's arrest on January 20th, as described above (See Fourth/Fifth Amendment violation pertaining to search of the home) agents of the Federal Bureau of Investigation, along with other law enforcement agencies, seized a gun at the home of Mr. Del Valle and his common law wife, Nellie. Shortly thereafter, the Government provided counsel with their response to the Standing Discovery Order issued by the Magistrate in the Hurley case. Moreover, That discovery, contained what the Government had already revealed at the initial appearance of January 20,2000, that the Defendant had a criminal history which in turn showed the Defendant to be a "prohibited person" under Title 18 U.S.C. § 922(g).

That the Government, inspite of having the aforementioned facts before it, chose not to charge Mr. Del Valle with a "gun charge". What the Government did do, however, was subpoena the common law wife to appear before the grand jury. Contemporaneously with, the issuance of this subpoena, the Government began to listen in on all of the Defendant's conversations with his common law wife from the Federal Detention Center in Miami, Florida, where the Defendant has been held since his January 20th arrest. The Government recorded, daily, conversations between the Defendant and Nellie Santana. The conversations that have been provided (it is assumed that all of the conversations that were listened to by the Government have been furnished in the discovery) show that the Government was

listening to these recordings from as early as May, 2000 to July, 2000.

It was after the last conversation in July, 2000, that the Government indicted Mr. Del Valle on this case before this Honorable Court. [1]

### *Memorandum of Law*

> Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.' But through his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country.
>
> Wolff v. McDonnel, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The notion that the Fourth Amendments continues to exists within the confines of a

---

[1] Nellie Santana, the Defendant's common law wife was also indicted, separately. The basis of the charge(s) against Ms. Santana pertain to alleged perjury committed before the grand jury. That matter, upon information and belief, is pending before the Honorable Judge Alan Gold.

jail facility is not a new one. While it is conceded that the Supreme Court has spoken clearly on the limitation of the applicability of the Fourth Amendment to an institutional setting, see Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held that the prisoner had no privacy interest in his prison cell, the holding in this case is not applicable to pre-trial detainees, as is the case of Mr. Del Valle.

> The extent of the Fourth Amendment's protection against examination of inmate mail may vary somewhat depending upon the inmate's status. In particular, measures which are constitutionally permissible when directed at those who have been convicted of a crime might violate the Fourth Amendment if applied to persons detained while they are awaiting trial.
>
> See LaFave, Wayne R. Search and Seizure: A Treatise on the Fourth Amendment, 3rd Edition (1996) §10.9, page 749.

While it is clear that jails, and in this particular case, pre-trial facilities are not limited by the Fourth Amendment, in terms of their right to monitor telephone communication, this action on the part of the jail has it limitations, most especially in the context, of pre-trial detainees. While the interests of the prisons, wherein convicted felons are housed, are clearly security maintenance, in the pre-trial context, the concerns are different. Compare, Jones v. Metzger, 456 F.2d 854 (6th Cir. 1972) and Jones v. Wittenberg, 29 Ohio Misc. 35, 330 F.Supp. 707 (N.D.Ohio 1971) with Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Procunier, did not involve the Fourth Amendment, however, in dealing

Page 10

with the issue of mail censorship in prisons, the Court in upholding the use of censorship of the mails stated as follows:

> [censorship] is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.
>
> Procunier, supra.

Likewise, the monitoring of communication has been upheld. However, it has to be measured against the reason for the monitoring. In qualifying this practice, a California wrote as follows:

> We emphasize that nothing in our opinion should be deemed a disapproval of the common practice of monitoring inmates' conversations with others, including their spouses, in visiting rooms or similar places. That practice seems reasonably necessary in order to maintain jail security and is not proscribed by law. But jail security can be adequately maintained without resorting to the *deliberate creation of a situation in which marital privacy could reasonably be expected to exist.* We cannot sanction the device of secretly exploiting marital confidences, as was done under the circumstances, of this case, for the sole purpose of gathering possibly incriminating evidence. (emphasis added)
>
> North v. Superior Court, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972)

In this particular case, there was a deliberate and unjustified act on the part of the Government, to obtain, in violation of law and established policy, the tape-recordings between Mr. Del Valle and his common law wife of 19 years, Nellie Santana, for the sole and exclusive purpose of questioning her, contemporaneously to her grand jury testimony concerning her husbands alleged unlawful possession of a handgun. This was not a case where the conversations were discovered <u>after</u> the fact. Quite the contrary, the Government in this case main the decision to build their case against the Defendant, by monitoring the telephone calls before, during and after the wife's grand jury testimony.

The Court cannot sanction this impermissible use of these calls. The gathering of incriminating evidence is not a purpose which has been recognized by the Courts in justifying the interception of telephone calls from within the confines of a pre-trial detention facility. This action on the part of the Government has also triggered 6th Amendment concerns.

## ***CONCLUSION***

The Defendant, Ramon Del Valle, most respectfully submits that all of the evidence, both in the form of tangible: the gun, and intangible, his statements should be suppressed. Furthermore, Mr. Del Valle most respectfully requests that the Government be precluded from using, at trial, the tape-recorded conversations between himself and his wife.

I HEREBY CERTIFY that a copy of the foregoing was furnished, by mail, to Christopher J. Clark, Assistant US Attorney, 99 NE 4 Street, Miami FL 33132-2111 and the Defendant, Ramon Del Valle, Registration # 55156-004, FDC-Miami, PO BOX 019120, Miami FL 33101-9120, this 5th day of September, 2000.

Respectfully submitted,

ANA M. JHONES
Attorney at Law
Bayside Plaza, Suite 625
330 Biscayne Boulevard
Miami, FL 33132
Telephone: (305) 374-4919 Dade
　　　　　　(954) 537-5565 Broward
Fax　　　: (305) 374-3414 Dade Fax
　　　　　　(954) 568-1870 Broward Fax

BY: _____
Florida Bar #771170