UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**NIGHT BOX FILED**
SEP - 7 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

CASE NO. 00-6194-CR-DIMITROULEAS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| RAMON DELVALLE | ) |
| | ) |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby files its response in opposition to defendant's motion to suppress. In support thereof, the government states the following:

### STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

On January 18, 2000, a federal grand jury sitting in Miami, Florida returned a multi-count indictment charging Ramon Delvalle and three co-defendants with federal fraud and conspiracy charges in Case No. 99-6062-Cr-Hurley(s). At that time, an arrest warrant was issued for Delvalle's arrest.

On January 20, 2000, agents with the Federal Bureau of Investigation and Florida Department of Law Enforcement assisted in the arrest of Delvalle at a residence located at 620 N.E. Second Court, #7, Hallandale, Florida. The agents learned that Delvalle and his girlfriend, Nellie Santana, jointly occupied this residence.

On that date, agents knocked and announced themselves as federal agents who sought to



execute the arrest warrant for Delvalle. The agents were admitted to the apartment and secured the premises. Delvalle and Santata were present in the studio apartment. After entry to the apartment, Delvalle consented to a search of the premises.

Upon initiation of the search, Special Agent Randal Glass of the Federal Bureau of Investigation asked Santata if there were any firearms inside the apartment. Santana replied in the negative. Special Agent Glass then asked Delvalle if he knew of any firearms in the residence. Delvalle responded that a weapon was located in the top left hand drawer of a black night stand drawer to the right of the bed.

Special Agent Glass inspected the drawer and located a small green zippered gun case. Glass then opened the case and discovered a silver .22 caliber Rohm revolver and eight .22 caliber rounds inside the case. The agents continued the search of the apartment. The agents obtained a written consent to search from the defendant, confirming his earlier verbal consent to search.

Delvalle had previously been convicted of a state felony offense. Based upon these facts, a federal grand jury returned a one-count indictment charging Delvalle with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

## ARGUMENT AND MEMORANDUM OF LAW

Defendant seeks to suppress the fruits of the search of the Hallandale residence occupied by defendant and his girlfriend on January 20, 2000, namely the gun and ammunition. Defendant maintains that the federal agents lacked an arrest warrant or exigent circumstances justifying the entry and search of the apartment. As demonstrated below, defendant's motion is both factually and legally unavailing.

In this case it is undisputed that the federal agents had a valid warrant for Delvalle's arrest, which represented a judicial finding that there was probable cause that Delvalle had committed a

felony and authorized the marshals to seize the defendant. Steagald v. United States, 451 U.S. 204, 213 (1980). "Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest to arrest him in his home." Id., n.7 at 214. Thus, "[a]n arrest warrant founded on probable cause carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." United States v. DeParias, 805 F.2d 1447, 1457 (11th Cir. 1986) (quoting Payton v. New York, 445 U.S. 473, 603 (1980)) (emphasis added).

The agents in this case had plentiful "reason to believe" that Delvalle was in his home. Agents had conducted a records check verifying that Delvalle resided at the Hallandale residence. The apartment appeared occupied, and the agents arrived at the home at a time when one would expect to find the residence occupied. The agents knocked and announced their presence, at which time Delvalle and Santana responded. This information, in and of itself, is sufficiently reliable and credible to justify the belief that Delvalle resided at the Hallandale residence.

Thereupon, the agents obtained Delvalle's valid consent to search the premises. "It is 'well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent to search.'" United States v. Freyre-Lazaro, 3 F.3d 1496, 1500-01 (11th Cir.1993) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973)), cert. denied, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994).

Here there is no doubt that Delvalle had the authority, as the resident of the Hallandale residence, to consent to the search of that residence. United States v. Matlock, 415 U.S. 164, 170, 94 S Ct. 988, 993, 39 L.Ed.2d 242 (1974); United States v. De Parias, 805 F.2d 1447, 1458 (11th

3

Cir.1986), cert. denied, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987).

Whether an individual's consent to a warrantless search was given voluntarily is a question of fact that must be decided in light of the totality of the circumstances. Schneckloth v. Bustamonte, supra, 412 U.S. at 227, 93 S.Ct. at 2047. Further, " '[t]he government bears the burden of proving ... that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.' " United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir.1993) (quoting United States v. Blake, 888 F.2d 795, 798 (11th Cir.1989)); see also Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983).

In examining this question, it is clear that under the totality of the circumstances as they existed at the time, Delvalle voluntarily consented to the search of his residence. In reaching this conclusion, it is of great weight that defendant understood the implications before agreeing to the search and later signed the consent- to-search form. The evidence of the agent's recovery of the firearm and ammunition should not be suppressed due to his valid consent.

Alternatively, the agents search of the drawer and seizure of the firearm can be considered "reasonable" in fourth amendment terms because it was necessary to protect the arresting officers' safety and prevent the concealment or destruction of evidence. See Chimel v. California, 395 U.S. 752, 762-64, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Supreme Court in Chimel declared that an arresting officer can search a suspect's person for weapons and evidence that could be destroyed, as well as the immediate area where an arrestee could grab a weapon. Courts have recognized such an exception in a housewide search after a proper arrest for the purpose of making a cursory safety check when "the circumstances (provide), at the least, probable cause to believe that a serious threat to safety (is) presented." United States v. Smith, 515 F.2d 1028, 1031, (5th Cir. 1975) (per curiam)

("a serious and demonstrable potentiality for danger"). Here, the agent's seizure of a revolver which was within reach of defendant at time of arrest was reasonable. See United States v. Cravero, 545 F.2d 406, 417 (5th Cir.), cert. denied, 429 U.S. 1100 (1977),

Defendant additionally moves to suppress the tape recorded conversations with his wife while he was in custody at FDC-Miami. Delvalle like all inmates at FDC-Miami signed a valid release evidencing his understanding that all of his telephone conversations, including those with members of his family, would be recorded. Under such circumstances, there is no prohibition to the government's recording of Delvalle's telephone conversations with Santana because he had no reasonable expectation of privacy. See United States v. Noriega, 917 F.2d 1543, 1551 (11th Cir.) (not unreasonable to condition use of telephones by penal inmates on monitoring of telephone calls by authorities charged with responsibility of maintaining security of penal facility), cert. denied, 498 U.S. 976 (1990).

The conversations relate directly to his knowledge of the gun charged in the instant offense. This evidence is relevant and material, and defendant points to no constitutional impediment for their admission. Consequently, this argument too is unavailing and should be denied.

WHEREFORE, the United States respectfully requests that the Court deny the motion to suppress filed by defendant Ramon Delvalle in its entirety.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: *[signature]*

CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR #0588040
99 N.E. 4th Street
Miami, Florida 33132
TEL: (305) 961-9167
Fax: (305) 530-7976

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided by facsimile this 7th day of September, 2000, to:

Ana Jhones, Esq.
330 Biscayne Boulevard
Suite 625
Miami, Florida 33132

CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY

7