UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    CASE NO. 00-6194-CR-DIMITROULEAS

Plaintiff,

vs.

RAMON DEL VALLE,

Defendant.

_____/

FILED by _____ D.C.

SEP 1 5 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## ORDER

THIS CAUSE has been heard upon Defendant's September 1, 2000 Motion to Suppress [DE-17], and the Court having reviewed the Government's September 7, 2000 Response [DE-21], having received testimony from Agent Glenn Kelly, Agent Randal Glass, and Agent Howard Greene at an evidentiary hearing held on September 15, 2000, having determined credibility of witnesses, having reviewed exhibits, and having heard arguments of counsel, finds as follows:

### FACTS

1. On January 18, 2000, an arrest warrant was issued for the Defendant in an indictment for fraud. There was an indication that the Defendant was possibly armed and had a criminal history, including a felony conviction.

2. Information was developed that the Defendant was at an apartment at 620 N.E. 2 Court #7, Hallandale. On January 20, 2000 at 8:00 a.m., seven agents or police officers knocked and announced their presence. Nellie Santana opened the door. The Defendant was seen standing behind Ms. Santana wearing only a towel; the Defendant was asked to step outside. The Defendant refused, became abusive and made evasive movements toward a bed.

3. Agents entered the apartment and arrested the Defendant near the bed, which was



three or four feet from a nightstand. He was uncuffed when he was allowed to put clothes on.

4.  The Defendant was asked if there was any drugs or weapons in the apartment. He said no. He was read his Miranda rights.

5.  The Defendant and Ms. Santana consented to a search for weapons.

6.  Agents retrieved marijuana from under the bed. The Defendant then admitted that the marijuana belonged to him. Agent Glass told Santana that he did not like being lied to; Santana again denied that firearms were present. The Defendant then voluntarily admitted[1] that there was a gun in the top left drawer of the nightstand. Inside the drawer was located a nylon zipped bag. Agent Glass recognized the bag to be a gun pouch. Inside the pouch was a .22 caliber revolver with eight (8) loose rounds.

7.  Later, the Defendant executed a written consent to search form (Exhibit #1).

8.  On May 30, 2000, Nellie Santana was subpoenaed to testify before the Grand Jury; she testified on June 15, 2000. The Grand Jury, on June 15, 2000, requested phone records from the Federal Detention Center.

9.  On June 30, 2000, a subpoena for the Defendant's phone calls was served on the Federal Detention Center. There were 493 phone calls. In a week or so, the recordings were available to be monitored. Agents reviewed the taped calls from May 30 until June 14, 2000. Inmates are notified that phone calls are tape-recorded and monitored (Exhibit #3).

10. On May 1, 2000, the Defendant signed a form recognizing that prison phone calls can be monitored. At the September 15, 2000 hearing, defense counsel conceded the lawful seizure of the prison tapes.

---

[1] No motion to suppress statements was filed in this case. See, U.S. v. Rube, 191 F.3d 376, 386 (4th Cir. 1999).

2

## DISCUSSION

11. A valid arrest warrant carries with it the authority to enter the residence of the person named in the warrant as long as the police have a reasonable belief that the suspect is currently present. Payton v. N.Y., 445 U.S. 573 (1980); U.S. v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000). Here, the agents and officers only entered when the Defendant refused their command to come out.[2]

12. Incident to a lawful arrest, officers may search an area within the arrestee's immediate control. Chimel v. California, 395 U.S. 752 (1969); In Re Sealed Case, 153 F.3d 759, 767 (D.C. Cir. 1998). The Defendant was properly arrested based upon the warrant. He also could have been arrested when the agents discovered marijuana under the bed that he moved toward. The nightstand was within the Defendant's immediate control so that it could be searched. When the agent saw the gun pouch, he recognized that it had a gun in it, and it was properly seized.

13. Additionally, there was testimony that Miranda warnings were administered prior to the Defendant's admission about the revolver. Therefore, the officers could properly seize the gun based upon the Defendant's statement.[3]

14. Finally, the Defendant and Ms. Santana consented to the search. U.S. v. Coraine, 198 F.3d 306, 309 (1st Cir. 1999); U.S. v. Coffman, 148 F.3d 952, 953 (8th Cir. 1998). A commanding voice does not automatically preclude someone's voluntary consent. U.S. v. Morales, 171 F.3d 978, 983 (5th Cir. 1999). The consent was confirmed by the Defendant's later executing a written consent

---

[2] Had the Defendant voluntarily come out of the home, the officers may have been justified in entering the home to obtain clothing and shoes for the Defendant. U.S. v. Gwinn, 219 F.3d 326, 334-335 (4th Cir. 2000).

[3] There is a public safety exception to the Miranda rule. N.Y. v. Quarles, 467 U.S. 649 655 (1984); U.S. v. Carroll, 207 F.3d 465 (8th Cir. 2000). U.S. v. Williams, 181 F.3d 945, 953 (8th Cir. 1999).

3

form.

15.     Even had defense counsel not stipulated to the denial of the motion to suppress tapes, the court would have so ruled. Prisoners do not have a right to privacy in their non-attorney phone calls. U.S. v. Daniels, 902 F.2d 1238, 1245 (7th Cir. 1990). Here, the Defendant at least implicitly consented to the taping of the phone calls. Gilday v. Dubois, 124 F.3d 277, 289 (1st Cir. 1997); U.S. v. Workman, 80 F.3d 688, 692-694 (2d Cir. 1996); U.S. v. Tomblin, 46 F.3d 1369, 1378 (5th Cir. 1995).

Wherefore, Defendant's Motion to Suppress is DENIED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of September, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

cc:   Ana M. Jhones, Esq.
      330 Biscayne Boulevard, Suite 625
      Miami, FL 33132

      Christopher J. Clark - AUSA

4